UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| WALLACE ASHBY, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 2:09-CR-64 |
| | ) | 2:11-CV-100 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | | |

**MEMORANDUM OPINION**

This matter is before the Court on Wallace Ashby's ("Ashby" or "petitioner") "Motion Under 28 USC § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody," [Doc. 27].[1] The United States has responded in opposition, [Doc. 35], and the time for reply has long since passed. The matter is therefore ripe for disposition. The Court has determined that the files and records in the case conclusively establish that Ashby is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary and the motion will be DENIED.

**I.    Procedural and Factual Background**

Ashby was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) in a one count indictment returned by the federal grand jury on July 14, 2009. [Doc. 1]. On July 28, 2009, the Magistrate Judge ordered Ashby's commitment to determine his competency to stand trial, [Doc. 7]. After the Bureau of Prisons had completed the evaluation of Ashby, an order was entered by the Magistrate Judge finding him competent to stand trial on November 23, 2009, [Doc. 13]. Pursuant to a negotiated plea agreement, [Doc. 16], the

---

[1]   All docket numbers are to docket entries in case No. 2:09-CR-64.

1

defendant entered a plea of guilty on January 20, 2010 to the indictment. A presentence investigation report ("PSR") was prepared and Ashby's advisory guidelines range was determined to be 70 to 87 months of imprisonment. On June 7, 2010, Ashby was sentenced to 78 months of imprisonment, followed by a three year term of supervised release. Judgment was entered on June 15, 2010, [Doc. 24]. No direct appeal was taken and the instant motion was timely filed on April 4, 2011.

Ashby's plea agreement contained the following stipulation of facts in the case:

> On or about April 21, 2009, at approximately 10:56 a.m. Johnson City Police Department (hereinafter JCPD) Officer J. Davis responded to an aggravated assault call at 2311 East Oakland Avenue in Johnson City in the Eastern District of Tennessee. Officer Davis was informed that a white male, believed to be WALLACE ASHBY, was stopped in the road in front of 2311 East Oakland Avenue, in his maroon mini-van, pointing a pistol and making threats to the bystanders in the yard.
>
> Upon his arrival, Officer Davis located the maroon mini-van, which pulled out in front of him. Officer Davis followed the vehicle and observed the van slow to a stop in front of the Oakland address and saw the driver raise his arm as if pointing a gun. The driver, once he became aware of Officer's Davis's presence, immediately pulled away. Officer Davis activated his siren and blue lights in an attempt to stop the driver of the van. The driver responded by speeding away at a speed reaching 70 miles per hour, in a 30 mile per hour zone, in an attempt to evade Officer Davis.
>
> Officer Davis pursued the van along Oakland Avenue. The driver of the van ran stop signs and was weaving around traffic along the roadway. The van turned right onto Forest Road. Officer Davis observed the maroon van slow at the intersection of Forest and Ridgeway Roads. The van continued left onto Ridgeway Road. Officer Davis lost sight of the maroon van at this time.
>
> Officer Davis went back to the 2311 East Oakland Avenue address to take statements from the victims he observed earlier. Officer Davis identified the victims as Kenneth Brummitt, Jennifer Brummitt, Jessica Anderson, and Ken Swanner. All four victims identified the driver of the maroon van as WALLACE ASHBY.

2

The victims stated ASHBY had stopped in front of the residence on an earlier pass before the officer arrived. During this incident, the victims said they were outside, and Ashby pointed a black hand gun at them. Officer Davis arrived behind Ashby just as he had circled back around for another pass of the victims' residence. The victims stated that ASHBY pointed the pistol at them again as Officer Davis pulled behind him. At that point, the victims said ASHBY sped off.

JCPD officers located WALLACE ASHBY at his home. Officers returned to the area where Officer Davis had seen ASHBY stop on Forest Road and searched the area. JCPD Sergeant Church recovered a .9 mm pistol in a yard at this location. ASHBY's vehicle was located in an alleyway behind 914 East Eighth Street. Lieutenant Sherfey found a .9 mm bullet in the vehicle between the front seats while conducting an inventory search of the vehicle for towing. JCPD Sergeant Parker took photographs of the crime scene for evidence.

ATF Task Force Officer, Corporal Kenny Hinkle, gave a verbal identification of the firearm and positively identified it as a Ceska Zbrojovka (hereinafter CZ) brand, model CZ75B, .9 mm caliber semi-automatic pistol. Corporal Hinkle, an interstate nexus expert, determined that the CZ, CZ75B, .9 mm caliber pistol is a modern firearm as defined by federal law and determined that the pistol was manufactured outside the state of Tennessee. Corporal Hinkle stated in order for the pistol to reach Tennessee the firearm must have been imported into the United States from outside the State of Tennessee, thus affecting interstate commerce.

Wallace Ashby admits that he did possess the CZ, model CZ75B, .9 mm caliber pistol on April 21, 2009, which was found by officers. Ashby further admits that he was convicted of possession of a schedule II controlled substance (crack cocaine) for resale, occurring on May 15, 1998, for which he received a three (3) year sentence in case number 24843 in the Criminal Court for Washington County, Tennessee.

All events occurred in Johnson City, Washington County, in the Eastern District of Tennessee.

[Plea Agreement, ¶ 4].

## II.     Standard of Review

This Court must vacate and set aside Ashby's conviction upon finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack ..." 28 U.S.C. § 2255(b).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735. A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of a constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v.Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). A petitioner must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to

4

determine whether an evidentiary hearing is warranted. If the motion to vacate, the answer, and the records of the case show conclusively that the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir.1986).

**III.    Analysis**

Ashby raises two claims of ineffective assistance of counsel in his petition which he states as follows:

> I wasn't told there was a law pending and was passed in September of 2010 due to me being under the Influance [sic] of drugs & alchol [sic] at the time of my crime that would allow me a downward departure if only she'd [counsel] ask [sic] for my case to be contiued [sic].
>
> All the victims in my case would have testified on my behalf but wasn't called upon to do so, they were even present in the courtroom at the time.
>
> My House Arrest Officer Eric Perry of ACCP in Johnson City would have also testified on my behalf and been a positive Influance [sic] on the Judges decession [sic] in my case but wasn't called upon to do so, he also knew of the stress I was under.
>
> Charlotte taylor center in carter county, Tn could have and would have confirmed I was seeking help due to stress I was under at the time of my charge but wasn't called upon either or even contacted on my behalf
>
> None of my support letters from family and the community was read nor any of them ask [sic] to testify at my sentencing hearing
>
> My Lawyer Nikki Pierce was aware of all the above and failed to do her job on my behalf, all I'm seeking is a downward departure on my time in which I'm rightfully intitled [sic] to I pray the court grant me a motion hearing on the Grounds of ineffective assistance of counsel

[Doc. 27 at 4,7]. Petitioner did not file a memorandum in support of his motion.

**A.    Change in Law/September 2010**

5

With all due respect to petitioner, the Court is simply unable to discern from his pleading the precise nature of his claim on this issue. All that can be discerned is that Ashby claims that some unspecified change in the law was "pending and was passed in September of 2010" which would have allowed him a downward departure due to his being under the influence of drugs and alcohol at the time of the offense, if only counsel had asked for his sentencing hearing to be continued, presumably to a date after September, 2010.

This Court is simply unaware of any law passed in September, 2010, authorizing a downward departure for defendants who committed their crimes while under the influence of drugs and/or alcohol. As the government notes in its response, to the extent Ashby is referring to the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, enacted August 3, 2010, that statute amended the statutory penalties for offenses involving crack cocaine, not violations of 18 U.S.C. § 922(g)(1) under which Ashby was convicted, and would not have afforded petitioner any benefit. Likewise, a review of the sentencing guidelines amendments which took effect November 1, 2010, shows that none had any application to Ashby's case. This claim lacks merit.

### B. Failure to Call Witnesses or Present Evidence at Sentencing

Petitioner's second claim is less difficult to discern; nevertheless, it is no less meritless. Ashby was sentenced on June 7, 2010, to a term of imprisonment of 78 months. Prior to sentencing, counsel for petitioner filed a sentencing memorandum arguing for no more than a bottom of the guidelines sentence of 70 months, noting Ashby's attempt at cooperation with the government, his medical and mental health problems and substance abuse, which had been left largely untreated despite his extensive contact with the state courts, his difficult childhood, the likelihood that petitioner could face further incarceration because of his pending state revocation

6

proceedings, and his employment history. [Doc. 22]. Counsel also provided the Court with a letter from Eric Perry, Senior Case Officer and Operations Manager with the Alternative Community Corrections Program serving non-violent offenders in Tennessee's 1st Judicial District. Mr. Perry's letter outlined his experience with Ashby during six months of intensive supervision prior to his arrest in this case, his completion of a residential substance abuse treatment program, and that he had no positive test for alcohol or drugs for which he did not have a prescription. The letter, however, noted that Ashby had "demonstrated significant frustration and anxiety with regards to the demands of his supervisor as well as family situations that arose during the course of his supervision." [Doc. 22-1]. Mr. Perry recommended intensive counseling and noted Ashby's "genuine desire to work." Mr. Perry expressed his fear that imprisonment would have a detrimental impact on the petitioner. The Court considered all these arguments and information before deciding on a sentence of 78 months.

Ashby contends that other information and testimony could have been presented to the Court by counsel which would have influenced the Court's decision and resulted in a lower sentence. Petitioner's allegations all suffer from some common flaws. First, Ashby does not identify the witnesses who would have testified, nor does he describe the testimony they would have given. He has not filed any affidavit from any of the proposed witnesses to establish what the witnesses' testimony would have been or even, indeed, that the witnesses were willing to testify. Second, without these allegations of fact, petitioner's allegations are merely conclusory and are not sufficient to justify relief.

Although unnecessary, the Court will briefly examine each of Ashby's specific allegations of ineffective of counsel on the part of counsel for failing to call witnesses or provide information to the Court at sentencing. First, Ashby faults counsel for not calling "the victims in

7

[his] case," who would have testified on his behalf and were present in the courtroom. This allegation is hard to understand since there was no individual victim of the offense of conviction, i.e., felon in possession of a firearm. To the extent Ashby refers to the victims of his threatening conduct on the day of his arrest, it is difficult to imagine how that testimony could have been helpful to petitioner. Counsel can hardy by faulted for not calling witnesses who would likely simply call further attention to Ashby's threatening, violent and reckless conduct on the day of arrest, and the attendant serious risk of danger to the victims themselves and the public at large.

Ashby does identify one potential witness at sentencing by name and gives at least a general outline of his potential testimony. That witness is Eric Perry, who was Ashby's supervising officer in the ACCP program. As noted above, however, counsel submitted to the Court a very detailed and persuasive letter from Perry that was fully considered by the Court. Ashby identifies no testimony Perry could have provided beyond that contained in his letter. Attorneys often make strategic decisions for various reasons to present letters to the Court at sentencing rather than to subpoena live witnesses, sometimes simply to limit additional, harmful information that might be elicited from the witnesses on cross examination by government counsel. Counsel's performance here was not deficient. Ashby also claims that counsel did not obtain records or call a witness from Charlotte Taylor Center in Carter County to confirm that he "was seeking help due to stress" at the time he was charged. He makes no effort to show how such general testimony or records would have affected the outcome of his sentencing. In fact, counsel did make the Court aware of petitioner's mental health issues and argued for a lower sentence or variance on that basis. There is no deficient performance here nor could petitioner show any prejudice. This claim is without merit.

8

Case 2:09-cr-00064-JRG-MCLC   Document 36   Filed 06/30/14   Page 8 of 10   PageID #: 101

Finally, Ashby claims that his "support letters from family and the community" were not presented nor were any of them called to testify at the sentencing hearing. Again Ashby does not identify these potential witnesses, the nature of their testimony, or the content of any letters they may have written. He does not attach any of the "support letters" to his motion. Even if offered, and as noted above, there are likely strategic reasons why they were not, Ashby cannot show any reasonable likelihood that the outcome of the sentencing would have been any different.

**IV.  Conclusion**

For the reasons set forth above, the Court holds that petitioner's conviction and sentencing are not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000). *Id*.

Under *Slack*, to warrant a grant of a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Having examined each of the petitioner's claims  under the Slack

standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE